**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                                )
**AIR LINE PILOTS ASSOCIATION, INT'L**        )
1625 Massachusetts Avenue, N.W.                    )
Washington, D.C. 20036,                                   )
                                                                )
                **Plaintiff,**                    )
                                                                )
    v.                                                     )    Civil Action No. _____
                                                                )
**ENVOY AIR INC.**                                        )
1101 17th Street, N.W.                                     )
Washington, D.C. 20036,                                   )
                                                                )
                **Defendant.**                 )
_____)

**COMPLAINT**

**Summary of the Action**

1. The Air Line Pilots Association, International ("ALPA") brings this action against Envoy Air Inc. ("Envoy") seeking to compel Envoy to abide by its obligations under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188, to implement a final and binding arbitration award issued by a System Board of Adjustment ("System Board"). In the alternative, ALPA seeks an order (1) remanding the award to the System Board, with direction to clarify the meaning of its award, or (2) directing Envoy to participate in an alternative dispute resolution process established by the parties in 2012 to deal with certain designated grievances and remedy awards, or (3) compelling Envoy to process a pending grievance addressing consequences of the System Board award.

**The Parties**

2.  Plaintiff ALPA is an unincorporated labor organization with headquarters at 1625 Massachusetts Avenue, N.W., Washington, D.C. 20036, and 535 Herndon Parkway, Herndon, Virginia 20170.  ALPA is the exclusive collective bargaining representative of the pilots employed by Envoy, within the meaning of the RLA, 45 U.S.C. §§ 151 Sixth and 181.

3.  Defendant Envoy is incorporated in the State of Delaware and maintains its principal place of business at 4333 Amon Carter Boulevard, Fort Worth, Texas 76155, as well as an office at 1101 17th Street, N.W., Washington, D.C. 20036.  Envoy is a "common carrier by air" engaged in the business of providing air services in interstate commerce within the meaning of the RLA, 45 U.S.C. § 181.  Prior to April 15, 2014, and at all times relevant to the events recounted in this Complaint, Envoy was American Eagle Airlines, Inc. ("American Eagle"), and it continues to operate aircraft under that name.[1]

**Jurisdiction and Venue**

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, because the action arises under the RLA, a federal statute regulating commerce.

5.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and under 45 U.S.C. § 153 First (p).

**The Railway Labor Act**

6.  The RLA governs labor relations for commercial air carriers.  Section 2 First of the RLA, 45 U.S.C. § 152 First, states that "[i]t shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements

---

[1] This Complaint will refer to both American Eagle (prior to April 15, 2014) and Envoy as "the Company."

concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce." In furtherance of the duty to "settle all disputes," Section 204 of the RLA, 45 U.S.C. § 184, states that it is "the duty of every carrier and of its employees" to establish arbitration panels, known as system boards of adjustment, to reach final and binding decisions concerning disputes "growing out of grievances, or out the interpretation or application of agreements concerning rates of pay, rules, or working conditions."

### The Pilots' System Board of Adjustment

7. ALPA and the Company are parties to a collective bargaining agreement ("CBA") that initially became effective in 1997 and that (with revisions and modifications) continues in force today. The current version of the CBA became effective on January 1, 2013. The CBA establishes the wages, benefits, and working conditions for pilots employed by the Company.

8. Sections 20 and 21 of the CBA contain procedures for resolving disputes concerning any action of the Company that affects a pilot. The parties established these procedures pursuant to the mandate of Section 204 of the RLA, 45 U.S.C. § 184. A copy of Sections 20 and 21 is attached to this Complaint as Exhibit A.

9. Section 20.A.1 of the CBA provides: "A pilot who has completed his probationary period will not be disciplined or discharged without just cause. Section 20.A.2 provides: "The Company will conduct a fair, impartial, and timely investigation before disciplining or discharging a pilot." Section 20.A.8 establishes the procedures for a pilot challenging discipline or discharge to file a grievance."

10. Section 20.B.1 of the CBA provides: "A grievance may be filed by any pilot or group of pilots concerning any action of the Company affecting him or them and must be filed in

writing with the Vice President of Flight Operations, or his designee." Section 20.C requires a hearing on a grievance within 14 days after it is received by the Vice President of Flight Operations, and the Company must issue its decision within 14 days thereafter. If the Company's decision is not satisfactory, ALPA may appeal it to the System Board of Adjustment. Section 20.E.5 provides that ALPA may consider the grievance denied if the Company fails to hold the required hearing within the time limits specified.

      11.     Section 21.A of the CBA establishes the System Board "for the purpose of adjusting and deciding disputes or grievances arising under the terms of this Agreement." Section 21.E.1 of the CBA provides that the System Board "will have jurisdiction over grievances filed pursuant to the terms of this Agreement." Section 21.E.2 provides that the System Board "will consider any grievance properly submitted to it by [ALPA] or the Company when such grievance has not been previously settled in accordance with the terms provided for" in the CBA. Pursuant to Section 21.B.1, the System Board consists of three members – one selected by the Company, one selected by ALPA, and a neutral arbitrator. Section 21.D of the CBA sets forth procedures for selecting the neutral arbitrator.

## The System Board Awards

      12.     A corporate predecessor of the Company hired Capt. W. Lee Cornelius as a pilot in 1989. In 2004 Cornelius began a medical leave of absence when he became unable to meet the medical requirements established by the Federal Aviation Administration ("FAA"). In accordance with Section 18.B.1 of the CBA, Cornelius was permitted to remain on his medical leave of absence until April 4, 2009. During his medical leave of absence, Cornelius received long-term disability benefits from the plan provided by the Company pursuant to the CBA.

4

13. On January 3, 2009, his physician cleared Cornelius to return to his occupation as a pilot. Cornelius applied for certification from the FAA, which was granted on April 2, 2009. On April 3, he faxed a copy of the FAA medical certification to the Company, along with other related documents.

14. In a letter dated April 6, 2009, the Company notified Cornelius that it had terminated his employment because his medical leave of absence expired before he was cleared to return to duty by the Company's medical department.

15. ALPA brought a timely grievance against the Company over the wrongful termination of Cornelius ("Termination Grievance") and ultimately submitted the Termination Grievance for arbitration before the System Board.

16. The Termination Grievance proceeded to a hearing before the System Board on October 20, 2009, with Arbitrator Gil Vernon serving as the neutral member. Both parties were present and represented by counsel, each party was afforded full opportunity to present evidence and testimony and to cross-examine witnesses, and both parties were permitted argument. All members of the System Board attended, heard all of the evidence, and participated fully in the hearing. Both parties filed post-hearing briefs on December 21, 2009, after the record was closed.

17. On July 20, 2010, the System Board sustained the Termination Grievance. It held:

> In conclusion, the [Company] violated the [CBA] by terminating [Cornelius's] leave of absence prematurely. Having presented prima facie evidence of his ability to return to flight duty in the form of an FAA first class medical certificate, he was entitled to have his medical condition evaluated by [the Company] prior to the expiration of his leave. The [System] Board shall retain jurisdiction for the purposes of determining an appropriate remedy.

A copy of this decision is attached as Exhibit B.

5

18.     The parties could not agree on a remedy, so they returned to the System Board for resolution of their dispute.  A hearing was held on January 5, 2011, with the same participants as at the initial proceedings.  Both parties filed post-hearing briefs following receipt of a transcript of the proceedings.

19.     In the remedy award that issued in May 2011 ("Remedy Award"), the System Board ordered "backpay" for Cornelius beginning on the date he was improperly terminated by the Company.  However, because Cornelius again became unable to meet FAA medical requirements as of February 6, 2010, the System Board ended backpay on that date, ordering "earnings consistent with Section 18.B.2 [the medical leave section of the CBA] for the time period of April 9 [sic], 2009 [the date of his termination] to February 6, 2010, in the same manner as similar employees are paid for such delays."  A copy of the Remedy Award is attached as Exhibit C.

### The Dispute Over the Remedy Award

19.     The language of the Remedy Award presumes that Cornelius would have been an employee during the backpay period, but for the Company's violation of the CBA.  As an employee, Cornelius would have been entitled to reenroll for disability insurance coverage or to reactivate his prior disability claim.

20.     The Company has refused to permit Cornelius to reenroll for disability insurance coverage or reactivate his prior disability claim, asserting that he was not an employee during the backpay period.

21.     ALPA has requested that the dispute over disability insurance for Cornelius be submitted to the System Board that issued the Remedy Award, but the Company has refused to participate in that process.

6

22.     In addition, the Company has refused to process a second grievance filed by ALPA on behalf of Cornelius.  In that second grievance (the "Disability Grievance"), ALPA contends that the Company improperly denied Cornelius's renewed claim for disability payments.  A copy of the Disability Grievance, and ALPA's submission to the System Board, is attached as Exhibit D.

### The Bankruptcy Side Letters

23.     The Company filed a petition for bankruptcy on November 29, 2011.  During the bankruptcy proceedings, ALPA and the Company negotiated modifications to the CBA.

24.     One agreement reached in these negotiations, Letter of Agreement 13-06 ("Letter 13-06"), provided for settlement of ALPA's prepetition claims against the Company.  This letter, dated September 25, 2012, and incorporated in the current version of the CBA, explicitly excluded from the settlement certain claims ("Listed Grievances").  The Cornelius System Board award is listed as an excluded claim.  A copy of Letter 13-06 is attached to this Complaint as Exhibit E.

25.     A supplemental agreement, dated December 14, 2012, and included in Letter 13-06, establishes an alternative dispute resolution procedure applicable to the Listed Grievances.  In addition, this agreement contains the following provision:

> This letter shall not impair or limit the jurisdiction of any arbitrator or System Board of Adjustment that has already conducted a hearing on any of the Listed Grievances.  The System Board and the arbitrator to which any such Grievance has been assigned shall continue to preside over that Grievance, and this Letter shall apply only to the satisfaction of any remedy issued in such Grievance.

### Post-Bankruptcy Communications

26.     After the Company emerged from bankruptcy on December 9, 2013, it approached ALPA with an "offer to close out the Cornelius Remedy Award."  The offer made on

7

February 14, 2014, consisted of an amount to cover hourly wages plus vacation accrual, but no other benefits (including long-term disability).

27. On February 24, 2014, representatives of ALPA and the Company exchanged email messages debating whether the Remedy Award made Cornelius eligible for long-term disability benefits. The exchange concluded with ALPA asserting the need to convene a System Board to rule on the issue and the Company stating that it would not agree to convene a System Board for that purpose.

## First Claim for Relief
### (Order Compelling Enforcement of the Remedy Award)

28. ALPA realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29. The System Board had jurisdiction to consider and decide the Termination Grievance brought on behalf of Cornelius and to issue the Remedy Award.

30. The Remedy Award presumes that Cornelius would have been a Company employee between April 2009 and February 2010, but for the Company's violation of the CBA.

31. As an employee, Cornelius would have been entitled to reenroll for disability insurance coverage or to reactivate his prior disability claim.

32. Accordingly, the Remedy Award entitles Cornelius to reenroll for disability insurance coverage or to reactivate his prior disability claim.

33. The Remedy Award was issued in compliance with the RLA.

34. The System Board did not exceed its jurisdiction in issuing the Remedy Award.

35. The System Board's Remedy Award was not tainted by fraud or corruption.

36. Accordingly, pursuant to the RLA, 45 U.S.C. §§ 153 First (p) and (q), 184, ALPA seeks an order compelling the Company to provide Cornelius with the disability benefits to

which he is entitled under the Remedy Award.

## Second Claim for Relief
### (Order Remanding the Remedy Award to the System Board for Clarification)

37. ALPA realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 36 as if fully set forth herein.

38. ALPA alleges this claim for relief as an alternative to its First Claim for Relief.

39. The System Board that decided the Termination Grievance retained jurisdiction to determine an appropriate remedy.

40. In its efforts to obtain the disability benefits due to Cornelius, ALPA has sought the Company's agreement to have the System Board clarify the meaning of its Remedy Award, but the Company has refused.

41. Accordingly, pursuant to the RLA, 45 U.S.C. §§ 153 First (m), 184, ALPA seeks an order remanding the Remedy Award to the System Board with direction to clarify whether Cornelius is entitled to reenroll for disability insurance coverage or to reactivate his prior disability claim.

## Third Claim for Relief
### (Order Directing Participation in Alternative Dispute Resolution Process)

42. ALPA realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 41 as if fully set forth herein.

43. ALPA alleges this claim for relief as an alternative to its First and Second Claims for Relief.

44. The Termination Grievance is among the Listed Grievances in Letter 13-06, and the final paragraph of the supplemental agreement dated December 14, 2012, provides: "The System Board and the arbitrator to which any such Grievance has been assigned shall continue to

preside over that Grievance, and this Letter shall apply only to the satisfaction of any remedy issued in such Grievance."

45. The Remedy Award, issued in the Termination Grievance, has not yet been satisfied.

46. The alternative dispute resolution procedures established by other provisions of this supplemental agreement therefore apply to clarification of the Remedy Award.

47. Accordingly, ALPA seeks an order directing the Company to participate in the alternative dispute resolution procedures established in the supplemental agreement in order to determine whether satisfaction of the Remedy Award entitles Cornelius to reenroll for disability insurance coverage or to reactivate his prior disability claim.

**Fourth Claim for Relief**
**(Order Compelling Arbitration of the Disability Grievance)**

48. ALPA realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 47 as if fully set forth herein.

49. ALPA alleges this claim for relief as an alternative to its First, Second, and Third Claims for Relief.

50. By failing to participate in processing the Disability Grievance, the Company has violated its obligation to make and maintain agreements, to settle disputes, and to maintain and utilize a board of adjustment, as set forth in RLA, 45 U.S.C. §§ 152 First, 184.

51. Accordingly, ALPA seeks an order compelling the Company to participate and cooperate in all transactions necessary to ensure that the System Board hears and decides the Disability Grievance in a prompt and orderly manner, in accordance with the CBA.

**Equitable Relief is Appropriate**

52. By the conduct described above, the Company has caused, and is continuing to cause, irreparable injury to ALPA and Cornelius. The Company will continue to engage in this unlawful course of conduct unless enjoined.

53. ALPA has fully complied with all obligations under the CBA and the RLA and has exhausted all available administrative and contractual remedies.

54. ALPA has no adequate remedy at law.

WHEREFORE, ALPA requests the following relief:

1. An order compelling the Company to provide Cornelius with the disability benefits to which he is entitled under the Remedy Award; or

2. In the alternative, an order remanding the Remedy Award to the System Board to clarify whether Cornelius is entitled to reenroll for disability insurance coverage or to reactivate his prior disability claim; or

3. In the alternative, an order directing the Company to participate in the alternative dispute resolution procedures established in the supplemental agreement in order to determine whether satisfaction of the Remedy Award entitles Cornelius to reenroll for disability insurance coverage or to reactivate his prior disability claim.; or

4. In the alternative, an order compelling the Company to participate and cooperate in all transactions necessary to ensure that the System Board hears and decides the Disability Grievance in a prompt and orderly manner, in accordance with the CBA; and

5. Such other relief as the Court may deem appropriate, including the costs ALPA has incurred in bringing this action.

Dated:  May 30, 2014                             */s/ Jonathan A. Cohen*
Jonathan A. Cohen, D.C. Bar No. 952861
AIR LINE PILOTS ASSOCIATION, INT'L
Legal Department
1625 Massachusetts Avenue N.W.
Washington, D.C. 20002
Telephone:  (202) 797-4095
Telecopier:  (202) 797-4014

Clay Warner, D.C. Bar No. 398346
Marta Wagner, D.C. Bar No. 445453
AIR LINE PILOTS ASSOCIATION, INT'L
Legal Department
535 Herndon Parkway
Herndon, Virginia  20170
Telephone:  (703) 481-2425
Telecopier:  (703) 481-2478

*Attorneys for Plaintiff*
*Air Line Pilots Association, Int'l*